<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELIYAHU KORENFELD,<br><br>     Plaintiff,<br><br>   v.<br><br>CAMP MACHANE, LLC, *et al.*,<br><br>     Defendants. | Civil Action No. 25-2329 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

  This matter comes before the Court upon Defendant Gross & Co., LLC's ("Gross") Motion to Dismiss (ECF No. 13) Plaintiff Eliyahu Korenfeld's ("Plaintiff" or "Korenfeld") Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure[1] 12(b)(6). Plaintiff opposed (ECF No. 16), and Gross replied (ECF No. 19). Plaintiff subsequently filed correspondence (ECF No. 20) providing supplemental authority for the Court's consideration, and Gross filed a response (ECF No. 21). For the reasons below, Gross's Motion to Dismiss is granted.

---

[1] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

## I.    **BACKGROUND**

### A.    **Factual Background[2]**

Plaintiff, a citizen of New York, brought this Complaint against four defendants: (1) Alexander Guttman ("A. Guttman"); (2) Sara Guttman ("S. Guttman"); (3) Camp Machane, LLC ("Camp Machane"); and (4) Gross (collectively, the "Defendants"). (Compl. ¶¶ 1-4, ECF No. 1.) Camp Machane is a limited liability company whose members are A. Guttman and S. Guttman, two New Jersey residents. (*Id.* ¶¶ 2-3.) Gross is a New Jersey limited liability company whose members, "upon information and belief, [are] all citizens of New Jersey and none of whom are citizens of New York State." (*Id.* ¶ 4.)

Plaintiff alleges that prior to August 15, 2019, A. Guttman retained Gross, an insurance broker, for the purposes of obtaining liability insurance for Camp Machane and its employees. (*Id.* ¶ 8.) Prior to August 15, 2019, Gross procured a one-million-dollar insurance policy from U.S. Fire Insurance Co. ("U.S. Fire") to insure "[Camp Machane's] non-owned motor vehicles." (*Id.* ¶ 9.) On August 15, 2019, at around 6:51 p.m., a counselor of Camp Machane, Yaakov Schwartz ("Schwartz"), was driving a motor vehicle with the license plate "HZM2106 NY" (the "Vehicle") that was leased by Camp Machane from Hertz. (*Id.* ¶¶ 10-11.) Schwartz was driving the Vehicle "with multiple camper-passengers on behalf of and with the permission of his employer, [Camp Machane]." (*Id.* ¶ 11.) Schwartz lost control of the Vehicle, causing it to turn over, on State Route

---

[2] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true and considers the public documents in the underlying state court action discussed in the Complaint. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (noting that the court can "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents" on a motion to dismiss under Rule 12(b)(6) (citation omitted)).

1214 near Gaston, North Carolina. (*Id.* ¶ 12.) Plaintiff was one of the passengers in the Vehicle during the accident and suffered "serious and permanent personal injuries, including fractures to his pelvis, sacrum[,] and clavicle, pulmonary contusions, kidney hematomas, liver contusions, pneumonia, loss of teeth, blood loss, loss of consciousness[,] and the removal of his spleen . . . ." (*Id.* ¶ 13.) Plaintiff alleges that Camp Machane "became liable" to him as a result of the accident, entitling Plaintiff to monetary damages from Schwartz and Camp Machane. (*Id.* ¶¶ 13-14.) Plaintiff further claims that: (1) A. Guttman and S. Guttman "were the sole owners, officials, principals, and directors of [Camp Machane] and in exclusive control of the camp" at the time the accident with the Vehicle occurred (*id.* ¶ 15); (2) Schwartz and Camp Machane became "debtors" under the New Jersey Uniform Voidable Transactions Act (the "NJUVTA") (*id.* ¶ 16); and (3) Plaintiff became a "creditor" under the NJUVTA (*id.* ¶ 17).

In June 2020, U.S. Fire brought a declaratory judgment action in the New Jersey Superior Court, Ocean County (the "DJ Action"), against Camp Machane for recission of the one-million-dollar insurance policy "for making a material misrepresentation in its insurance application." (*Id.* ¶ 18.) In February 2021, Korenfeld was permitted to intervene in the DJ Action. (*Id.* ¶ 19.) In June 2021, Camp Machane filed a third-party complaint in the DJ Action against Gross alleging professional negligence for failing to procure auto insurance. (*Id.* ¶¶ 18, 20.) In October 2022, the Court in the DJ Action determined that the insurance policy was rescinded due to Camp Machane's material misrepresentation on the application, which was filled out and signed by A. Guttman. (*Id.* ¶ 21.) Following the recission, Camp Machane became insolvent. (*Id.* ¶ 23.) In December 2022, Camp Machane settled the claim it had against Gross for an amount that Korenfeld claims "was not a reasonably equivalent value for its claims against Gross." (*Id.* ¶¶ 24-25.) Plaintiff now brings this action and alleges in part that "Gross, as the transferee of the

3

[Camp Machane release,] and transferor of the insufficient consideration for said release[,] is subject to all of the remedies under the [NJUVTA] . . . ." (*Id.* ¶ 37.)

### B.     Procedural Background

On April 7, 2025, Plaintiff filed his Complaint against Defendants alleging two causes of action related to Defendants' purported violation of the NJUVTA. (*See generally* Compl., ECF No. 1.) Gross subsequently moved to dismiss the single claim asserted against it with prejudice. (*See generally* Gross's Mot. to Dismiss, ECF No. 13.) Plaintiff opposed Gross's motion (*see generally* Pl.'s Opp'n Br., ECF No. 16), and Gross replied (*see generally* Gross's Reply Br., ECF No. 19). Plaintiff subsequently filed correspondence asking the Court to consider supplemental authority in evaluating Gross's Motion. (*See generally* Pl.'s Correspondence, ECF No. 20.) Gross replied, arguing that Plaintiff's correspondence was an impermissible sur-reply. (*See generally* Gross's Correspondence, ECF No. 21.)

## II.     <u>LEGAL STANDARD</u>

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare

legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    DISCUSSION

Gross raises three arguments in favor of dismissal of the claim against it: (1) Plaintiff's claim is barred by the entire controversy doctrine; (2) Plaintiff's claim is barred by the doctrine of res judicata; and (3) Plaintiff failed to state a claim upon which relief can be granted. (*See generally* Gross's Moving Br., ECF No. 13-1.) Because the Court agrees that Plaintiff's claim against Gross is barred by the entire controversy doctrine, the Court need only address Gross's first argument.

The entire controversy doctrine is essentially "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015) (quoting *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997)). "Because New Jersey law determines the preclusive effect of a prior New Jersey state court judgment on the merits, the entire controversy doctrine is applicable here." *Bank Leumi USA v. Kloss*, 331 F. Supp. 3d 404, 409 (D.N.J. 2018) (first citing *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 142 (3d Cir. 1999); and then citing *Rycoline*, 109 F.3d at 887). As codified in New Jersey Court Rule 4:30A, the doctrine provides, in relevant part that: "[n]on-joinder of claims

5

required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine. . . ." N.J. Ct. R. 4:30A.

"Under the entire controversy doctrine, a party cannot withhold part of a controversy for later litigation even when the withheld component is a separate and independently cognizable cause of action." *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008) (citing *Paramount*, 178 F.3d at 137). In determining whether a claim should be barred under the doctrine, "the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." *Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 27 (N.J. 2015) (quoting *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995)). "The entire controversy doctrine is 'constrained by principles of equity' and does not bar claims 'where to do so would be unfair in the totality of the circumstances and would not promote any of its objectives, namely, the promotion of conclusive determinations, party fairness, and judicial economy and efficiency.'" *Fed. Mut. Ins. Co. v. City of Ocean City, N.J.*, No. 19-21405, 2022 WL 951287, at *6 (D.N.J. Mar. 30, 2022) (quoting *U.S. ex rel. Charte v. Am. Tutor, Inc.*, 934 F.3d 346, 352 (3d Cir. 2019)). As a result, the doctrine's "application is flexible, with a case-by-case appreciation for fairness to the parties." *In re Mullarkey*, 536 F.3d at 229.

Plaintiff argues that the entire controversy doctrine does not bar his claim against Gross here because: (1) he "had no claim against Gross in the underlying recission action[ as i]t is well established that no duty runs from an insurance broker to an injured third party"; (2) "the crux of the two lawsuits [the DJ Action and the present action] are based on separate facts"; and (3) "it would be fundamentally unfair to Plaintiff" if his claim was barred by the entire controversy doctrine. (Pl.'s Opp'n Br. 3-7.) The Court disagrees.

6

*First*, Plaintiff is incorrect that he could not have brought a claim in the underlying DJ Action. Plaintiff contends that "[i]t was not until Gross took part in a voidable transaction that a claim arose" and that he "was not even aware of the amount of the settlement until recently." (Pl.'s Opp'n Br. 3-4.) Even if a claim did not arise until the settlement was entered into,[3] as Gross points out, Korenfeld was aware of the settlement between Camp Machane and Gross because he filed correspondence *in the DJ Action* objecting to the voluntary dismissal that the two entities filed after reaching their agreement. (*See* Ex. I to Gross's Mot. to Dismiss ("Ex. I"), ECF No. 13-13.) This objection came after: (1) Korenfeld filed a motion to intervene in the DJ Action; (2) Camp Machane obtained leave of court to sue Gross in the DJ Action—an action Korenfeld was certainly aware of after intervening; and (3) Camp Machane and Gross entered into the settlement agreement over a year after Camp Machane first brought its third-party complaint against Gross. (Gross's Moving Br. 11-14; Compl. ¶¶ 19-20, 24.) Korenfeld had an opportunity to file a formal motion objecting to the settlement in the underlying DJ Action and seek relief at that time.[4] Korenfeld, however, chose not to do so beyond filing short correspondence to the Court, instead focusing on his appeal of the grant of summary judgment in favor of U.S. Fire. (*See* Compl. ¶ 22; Ex. I); *In re Mullarkey*, 536 F.3d at 229; *see also Wadeer*, 110 A.3d at 606 (noting that entire controversy doctrine "does not apply to unknown or unaccrued claims" but that the inquiry "focuses on the litigation posture of the respective parties and whether all of their claims and defenses could be

---

[3] For the purpose of its analysis, the Court assumes that Korenfeld had no cause of action against Gross prior to Gross's settlement with Camp Machane. The Court notes, however, that the New Jersey Supreme Court has recognized that "[i]n certain settings, insurance brokers have been held to have a limited duty to a third party who is not the insured, but who has nonetheless suffered harm by virtue of the broker's act or omission." *Holm v. Purdy*, 285 A.3d 857, 869 (N.J. 2022).

[4] In fact, as Gross points out (*see* Gross's Moving Br. 11), Korenfeld could have sought leave to sue Gross in state court, which is exactly what Camp Machane elected to do in bringing suit against Gross in the DJ Action.

most soundly and appropriately litigated and disposed of in a single comprehensive adjudication" (citation omitted)). The Court, therefore, rejects Plaintiff's first argument and finds that Plaintiff had an opportunity to raise its claim against Gross in the DJ Action.

*Second*, although the facts of the present action and the DJ Action are not identical, the claims relate to the same series of transactions and underlying facts. The test for determining whether claims are "related" such that they should be brought in a single action pursuant to the entire controversy doctrine is:

> if parties or persons will, after final judgment is entered, be likely to have to engage in additional litigation to conclusively dispose of their respective bundles of rights and liabilities that derive from a single transaction or related series of transactions, the omitted components of the dispute or controversy must be regarded as constituting an element of one mandatory unit of litigation.

*DiTrolio*, 662 A.2d at 502 (citing *O'Shea v. Amoco Oil Co.*, 886 F.2d 584, 590-91 (3d Cir. 1989)).

Korenfeld's claim in this action rests on the theory that "Gross, as the transferee of the Camp Machane release[,] and transferor of the insufficient consideration for said release[,] is subject to all of the remedies under the [NJUVTA] . . . ." (Compl. ¶ 37.) This claim directly relates to facts at issue in the underlying DJ Action, namely, the third-party complaint that Camp Machane filed against Gross. (*See* Gross's Reply Br. 9.) As Gross points out, Gross's defense to Plaintiff's NJUVTA claim would center on the argument that "Gross did not commit malpractice and/or that the $200,000.00 settlement was reasonable based on strength of the evidence against Gross relating to the malpractice claim." (*Id.*) This would necessitate a reproduction of the documents that were produced in connection with the third-party complaint in the DJ Action. (*See id.*)

Gross also likely would not have settled the claim Camp Machane brought if it had known Korenfeld would subsequently bring suit regarding his purported rights related to the accident and the settlement agreement that Gross reached with Camp Machane. The Court, therefore, finds that

any claim Korenfeld had against Gross related to the settlement between Gross and Camp Machane was necessarily "related" to, at a minimum, the third-party complaint and settlement thereof at issue in the DJ Action. *See DiTrolio*, 662 A.2d at 502. The Court therefore rejects Plaintiff's second argument.

*Third*, it would not be "fundamentally unfair" to find that Plaintiff's claim against Gross is barred by the entire controversy doctrine. Plaintiff argues that because the state court decided not to act on Korenfeld's correspondence objecting to the dismissal of Camp Machane's third-party complaint in the DJ Action, that this Court should now hear Plaintiff's claim. (*See* Pl.'s Opp'n Br. 7.) Plaintiff, however, has not provided any argument as to why the state court was not in a position to evaluate Korenfeld's objection in the DJ Action. (*See generally id.*) Further, as Gross also notes, from the time Gross filed an answer to the third-party complaint to the stipulation of dismissal was 514 days, which was plenty of time for Korenfeld to raise any potential claims against Gross. (*See* Gross's Reply Br. 10.)

The Court here sees no reason to give Korenfeld a second bite at the apple. In fact, it would be unfair to Gross to make it revisit a claim it thought had already been addressed by its settlement in the DJ Action years ago. *See DiTrolio*, 662 A.2d at 505 ("Fairness is thus a protective concept that focuses primarily on whether defendants would be in a better position to defend themselves if the claims against them had been raised and asserted in the first litigation."). The Court, therefore, rejects Plaintiff's fairness argument and finds that Plaintiff's claim against Gross is barred by the entire controversy doctrine.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Gross's Motion to Dismiss is granted. Plaintiff's claim against Gross is dismissed with prejudice. The Court will issue an Order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: <u>February 25, 2026</u>